UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BILLIE B. NELSON, )
 )
    Plaintiff(s), )
 )
vs. ) Case No. 4:05CV1290 JCH
 )
BARNES-JEWISH HOSPITAL, )
 )
    Defendant(s). )

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment, filed August 23, 2006. (Doc. No. 20). The matter is fully briefed and ready for disposition.

## **BACKGROUND**

By way of background, Plaintiff Billie B. Nelson ("Nelson"), a fifty-seven year old African-American female, began working for Defendant Barnes-Jewish Hospital ("BJH") in approximately 1968. (Amended Compl., ¶¶ 4, 8). Beginning in 1972, Nelson worked as a supervisor in the Central Sterile Processing Department ("CSPD") of Barnes-Jewish Hospital.[1] (BJH's Statement of Uncontroverted Material Facts ("BJH's Facts"), ¶¶ 1, 2, citing Nelson's 6/9/06 Dep., P. 27).[2]

In February, 2000, Ms. Judy Mullins ("Mullins") became the Manager of CSPD and Nelson's direct supervisor. (BJH's Facts, ¶ 3, citing Mullins Aff., ¶ 7). Ms. Carolyn York ("York"), the

---

[1] Nelson claims she was the only African-American supervisor in the CSPD. (Amended Compl., ¶ 15). BJH, however, disputes this contention. (See Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, P. 5, citing Mullins Dep., PP. 52-53).

[2] Because Nelson did not respond to BJH's Statement of Uncontroverted Material Facts, the facts are deemed admitted. See Local Rule 7-4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.").

director of Peri-Operative Services, made the decision to hire Mullins.[3] (Id., citing York Aff., ¶¶ 5, 10). Nelson did not apply for the position, nor was she qualified for it. (Id., citing York Aff., ¶ 11).

In 2000, 2001, and 2002, Mullins gave Nelson generally positive evaluations. (BJH's Facts, ¶ 5, citing Nelson's 6/9/06 Dep., PP. 162-163, 167, 189; BJH's Exhs. A-D). Mullins' evaluations did contain suggestions for improvement, however, particularly concerning Nelson's need for improved computer and collaborative management skills. (Id., citing Nelson's 6/9/06 Dep., PP. 162-163, 164-165, 167, 170; Mullins Aff., ¶ 35; BJH's Exhs. A-D).

In early 2004, CSPD was undergoing significant changes, resulting in both an increased need for collaborative planning meetings, and an increased dependence on technology. (BJH's Facts, ¶ 6, citing Mullins Aff., ¶¶ 10-11; York Aff., ¶¶ 14-16). As a result, Mullins and York decided to move Nelson from the day shift to the night shift, allegedly because they believed Nelson's experience and skills made her more suited for the night shift in the changing CSPD. (Id., ¶ 7, citing Mullins Aff., ¶ 14; York Aff., ¶ 19; Nelson's 6/9/06 Dep., P. 103).

Nelson's transfer to the night shift was effected in March, 2004. (BJH's Facts, ¶ 11, citing Amended Compl., ¶¶ 11, 31; Nelson's 6/9/06 Dep., P. 44). Nelson retained the same title and benefits after the reassignment, and actually received an increase in pay as a result of the change. (Id., citing Nelson's 6/9/06 Dep., P. 87; Mullins Aff., ¶ 15; York Aff., ¶ 20).[4] Mullins reassigned Linda Dillon-Hoerchler ("Dillon-Hoerchler"), a Caucasian female, to be the day shift supervisor. (Id., ¶ 14,

---

[3] Both Mullins and York are older than Nelson. (BJH's Facts, ¶ 4, citing York Aff., ¶ 3; Nelson's 6/9/06 Dep., P. 113).

[4] BJH maintains that at all times, Nelson's salary was consistent with the range for her position, and she always received average to above-average increases. (BJH's Facts, ¶ 12, citing York Aff., ¶ 31). Furthermore, Nelson admits she was the highest compensated supervisor, and that she has no evidence she should have been paid even more due to her seniority. (Id., ¶ 13, citing Nelson's 6/26/06 Dep., PP. 136-138).

citing Mullins Aff., ¶ 16; York Aff., ¶ 21).[5]

While Nelson was on leave in approximately June, 2004, Mullins discovered Nelson improperly had been storing a large amount of surgical equipment in her office. (BJH's Facts, ¶ 15, citing Nelson's 6/9/06 Dep., P. 89; Mullins Aff., ¶ 27; York Aff., ¶ 29). Mullins had all the surgical equipment removed[6], and documented the incident in a Letter of Expectation dated July 7, 2004. (Id., ¶¶ 16, 18, citing Mullins Aff., ¶¶ 27-28; BJH's Exh. F; Nelson's 6/26/06 Dep., PP. 88-90). Mullins previously had disciplined Dillon-Hoerchler for her related, but less severe, offense. (Id., ¶ 18, citing Mullins Aff., ¶ 27).[7]

On July 14, 2004, Nelson filed her initial Charge of Discrimination with the EEOC. (BJH's Facts, ¶ 25, citing BJH's Exh. K). The Notice of Charge was mailed to BJH Vice President Lincoln Scott on July 21, 2004, and stated, "no action is required by you at this time." (Id., ¶ 26, citing BJH's Exh. L). Nelson amended her Charge of Discrimination on or about December 20, 2004, and notice of the amended charge was mailed to BJH on December 30, 2004. (Id., ¶ 27, citing BJH's Exhs. M, N). At that time, BJH investigated the amended charge. (Id., citing BJH's Exh. O; Mullins Dep., PP. 87-88).

Upon Nelson's reassignment to the night shift, Human Resources began receiving complaints about her from other employees. (BJH's Facts, ¶ 19, citing York Dep., PP. 30-31; Tillman Dep., PP. 38-40, 45; Mullins Aff., ¶ 26; York Aff., ¶ 24). On April 12, 2005, York issued Nelson a Letter of

---

[5] Nelson testified during her deposition that she believed Mullins reassigned Dillon-Hoerchler because the two were friends. (BJH's Facts, ¶ 14, citing Nelson's 6/9/06 Dep., PP. 169, 192, 193, 194, 195).

[6] Nelson maintains she returned from leave in August, 2004, to find her office "ransacked." (Amended Compl., ¶ 93).

[7] Nelson apparently denies Dillon-Hoerchler's offense was less severe, but offers no evidence to that effect. (Memorandum in Opposition to Motion for Summary Judgment ("Nelson's Opp."), P. 7).

Expectation outlining performance deficiencies, including: failure to communicate with her supervisor, Mullins; sleeping on the job and other unavailability; "militaristic" and "hostile" management style; and unfair treatment.[8] (BJH's Facts, ¶ 20, citing BJH's Exh. G; Nelson's 6/26/06 Dep., PP. 104-106; York Aff., ¶ 24; York Dep., PP. 10-12, 30-31, 42-43; Tillman Dep., PP. 29-30, 32). York also issued a Letter of Expectation to Mullins. (Id., citing Mullins Dep., P. 90).

Subsequently, employees in Nelson's department continued to complain that Nelson treated them harshly and unfairly, and discriminated against them on the basis of race. (BJH's Facts, ¶ 21, citing Nelson's 6/9/06 Dep., PP. 122-124, 137, 140, 145; BJH's Exh. H; Nelson's 6/26/06 Dep., P. 108; Tillman Dep., PP. 20-23; Daniel Dep., P. 17).[9] As a result, in September, 2005, Human Resources launched an investigation into the complaints against Nelson. (BJH's Facts, ¶ 22, citing Daniel Dep., PP. 32-33, 36). Ms. Vera Daniel, the African-American Director of Human Resources, suspended Nelson with full pay during the investigation. (Id., citing Nelson's 6/26/06 Dep., PP. 100, 47).

At the conclusion of the paid suspension, BJH offered Nelson the opportunity to return to work as a day shift supervisor in a CSPD that no longer included Mullins. (BJH's Facts, ¶ 23, citing Daniel Dep., PP. 37-38, 94-95, 96; BJH's Exhs. I, J). Nelson declined the invitation, instead electing to resign effective January 19, 2006. (Id., ¶ 24, citing Daniel Dep., P. 37; York Aff., ¶ 6).

Nelson filed her Amended Complaint in this matter on September 26, 2005. (Doc. No. 2). The Amended Complaint consists of five counts, as follows: Racial Discrimination (Count I); Age Discrimination (Count II); Racial Harassment (Count III); Harassment Based on Age (Count IV); and

---

[8] The latter three deficiencies were reported by Nelson's fellow employees. (BJH's Facts, ¶ 20).

[9] Nelson acknowledges many of the complaints against her came from African-American employees. (BJH's Facts, ¶ 21, citing Nelson's 6/9/06 Dep., PP. 122-124, 145).

Retaliation (Count V). (Id., ¶¶ 11-103). As stated above, BJH filed the instant Motion for Summary Judgment on August 23, 2006, maintaining there exist no genuine issues of material fact, and thus BJH is entitled to judgment as a matter of law on all counts of Nelson's Amended Complaint. (Doc. No. 20).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

**I.      Racial Discrimination**

As stated above, in her Amended Complaint Nelson alleges unlawful discrimination on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). (Amended Compl., ¶¶ 11-29). Because she lacks direct evidence of discrimination, Nelson's Title VII claim is analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06, 93 S.Ct. 1817, 1823-26, 36 L.Ed.2d 668 (1973). See Gilmore v. AT & T, 319 F.3d 1042, 1046 (8th Cir.), cert. denied, 540 U.S. 955 (2003); Sherman v. Runyon, 235 F.3d 406, 409 (8th Cir. 2000) (citations omitted). Under this framework, Nelson has the initial burden of establishing a prima facie case of discrimination. Twymon v. Wells Fargo & Co., 462 F.3d 925, 934 (8th Cir. 2006). In order to present a prima facie case of race discrimination, Nelson must show: "(1) that [s]he is a member of a protected class, (2) that [s]he was meeting the employer's legitimate job expectations, (3) that [s]he suffered an adverse employment action, and (4) that similarly situated employees outside the protected class were treated differently." Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004), citing Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000).

If Nelson is successful in establishing the prima facie case, a rebuttable presumption of discrimination arises; the burden then shifts to BJH, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997) (citation omitted); see also Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810 (8th Cir. 2005). Once BJH articulates such a reason, the presumption of discrimination disappears, and Nelson must prove that BJH's proffered reason is merely a pretext for discrimination. Tolen, 377 F.3d at 882 (citation omitted).

In her Complaint, Nelson alleges she was subjected to numerous instances of discrimination in the terms and conditions of her employment. The Court will address Nelson's allegations in turn.

### A. Shift Transfer

In her Amended Complaint, Nelson first complains she was forced to transfer from supervisor on the day shift to supervisor on the night shift, a less preferable position, and was replaced by white employees with less seniority. (Amended Compl., ¶¶ 11-14). Upon consideration, however, the Court finds that with this allegation, Nelson fails to establish she suffered an adverse employment action, as with her transfer she retained the same title and benefits, and actually received an increase in pay. (Memorandum in Support of Defendant's Motion for Summary Judgment ("BJH's Memo in Support"), P. 4; see also BJH's Facts, ¶ 11). Under Eighth Circuit law, "[a] materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. There must be a material change in employment status--a reduction in title, salary, or benefits." Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006) (internal quotations and citations omitted). See also Spears v. Missouri Dept. of Corrections and Human Resources, 210 F.3d 850, 853 (8th Cir. 2000) (internal quotations and citation omitted) ("It is well established that [a] transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action."); Allen v. Gutierrez, 2006 WL 1662771 at *4 (D. Minn. Jun. 12, 2006) (holding failure to permit Plaintiff to work a requested shift did not constitute an adverse employment action). Under these circumstances, Nelson fails to present a prima facie case of race discrimination with respect to her transfer to the night shift.[10]

Even assuming Nelson presented a prima facie case, the Court finds Nelson's claim

---

[10] In her response to BJH's motion, Nelson alleges the transfer was adverse, as the workers on the night shift were "less well trained and more problematic." (Nelson's Opp., PP. 4, 6). Nelson offers, however, absolutely no evidentiary support for this assertion.

nevertheless fails under McDonnell Douglas. With respect to BJH's burden, the Eighth Circuit has explained the standard for rebuttal of Nelson's prima facie case as follows:

> This burden is not onerous, and the explanation need not be demonstrated by a preponderance. The defendant need not persuade the court that it was actually motivated by the proffered reasons. Rather, it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against plaintiff that would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. If the defendant offers a facially nondiscriminatory explanation, regardless of its persuasiveness, the presumption in plaintiff's favor evaporates and it is left for the trier of fact to determine whether the plaintiff has proven that the defendant's action was motivated by discrimination.

McCullough v. Real Foods, Inc., 140 F.3d 1123, 1127 (8th Cir. 1998), quoting Buchholz v. Rockwell Int'l Corp., 120 F.3d 146, 150 (8th Cir. 1997) (citations and internal quotations omitted).

In the instant case, BJH asserts Mullins and York decided to transfer Nelson to the night shift because, "in their best judgment, Plaintiff's experience and skills were a unique combination that made her more suited for the night shift than for the day shift." (BJH's Memo in Support, P. 7, citing BJH's Facts, ¶¶ 7-9). Specifically, BJH maintains Nelson, "lacked the computer and inter-personal skills necessary for the day/evening shifts in the changing and increasingly collaborative and technology-dependent CSPD department," and, "[a]t the same time, Plaintiff's seniority and taskmaster style was more appropriate for the night shift, where no other supervisors would be on duty and where computer skills were less important." (BJH's Facts, ¶¶ 8-9, citing Mullins Aff., ¶¶ 12, 14, 35; York Aff., ¶¶ 17-19; Nelson's 6/9/06 Dep., PP. 103, 106, 162-63, 164-165, 166-167, 170; BJH's Exhs. A-E; Mullins Dep., PP. 100-101; Tillman Dep., PP. 37-38). The Court finds that with these assertions, BJH presents a legitimate, nondiscriminatory reason for its action.

Because BJH has met its burden of rebutting Nelson's prima facie case, the burden then shifts to Nelson to establish a genuine controversy concerning intentional discrimination. The Eighth Circuit explained Nelson's burden in Rothmeier v. Investment Advisers Inc., stating as follows:

> Consequently, the rule in this Circuit is that [a race] discrimination plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [race] was a determinative factor in the adverse employment decision.

Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

Upon consideration, the Court finds Nelson fails to present evidence tending to demonstrate that BJH's legitimate, non-discriminatory explanation for its actions was merely a pretext for discrimination. Rather, during her deposition Nelson admitted that it made business sense to have the most experienced supervisor work the shift with the fewest other supervisors, i.e., the night shift. (See Nelson's 6/9/06 Dep., PP. 105, 106). Furthermore, with respect to Dillon-Hoerchler, who eventually permanently replaced Nelson as day shift supervisor, Nelson testified as follows: "I feel like she (Mullins) put me on the midnight shift *because she wanted her friend on days*, so this was a series of steps in order to make that happen." (See Nelson's 6/9/06 Dep., P. 194 (emphasis added)). Nelson's own testimony thus supports BJH's assertion that its decision to transfer Nelson to the night shift was based on something other than race, and so BJH's Motion for Summary Judgment on this point must be granted.[11]

### B.  Denial Of A Computer

Nelson asserts she was the only supervisor in her department denied a computer. (Amended Compl., ¶ 17). With this allegation, however, the Court finds Nelson fails to present a prima facie case of race discrimination, as she fails to demonstrate that similarly situated employees outside the

---

[11] In her response, Nelson attempts to demonstrate BJH's reasoning with regard to her lack of computer skills was pretextual, as follows: "One of the pretextual reasons for Plaintiff's being put on the night shift was her lack of computer skills. Yet, Plaintiff was allowed only two seven hour training sessions, rather than being enrolled in an ongoing computer class." (Nelson's Opp., P. 6, citing Nelson's 6/9/06 Dep., P. 176). Rather than demonstrating pretext, however, the Court finds Nelson's assertion to be an admission that her computer skills were in fact lacking.

- 9 -

protected class were treated differently. Specifically, the Court notes it is undisputed that (1) until September, 2004, the computer was in the day/evening supervisor office, and all supervisors had access to it; (2) Nelson refused to share that office with the other supervisors; (3) Nelson never requested her own computer; and (4) Nelson received her own computer in September, 2004, when funds became available for each supervisor to have her own. (BJH's Memo in Support, P. 10; BJH's Facts, ¶ 37, citing Nelson 6/9/06 Dep., P. 173; Mullins Aff., ¶ 25). Under these circumstances, this portion of Nelson's claim of discrimination on the basis of race must fail.

### C. Pay Differential

Nelson next complains she received only nominally higher pay than other supervisors, despite the fact that she had more than 30 years more seniority than similarly-situated white employees. (Amended Compl., ¶ 19). Even assuming that with this allegation, Nelson presents a prima facie case of race discrimination, the Court finds BJH has a legitimate, non-discriminatory reason for its action. Specifically, BJH presents evidence that at all times, Nelson's salary was consistent with the range for her position, and that she always received average to above-average increases. (BJH's Facts, ¶ 12, citing York Aff., ¶ 31). Nelson offers nothing to dispute this assertion; rather, she admitted in her deposition that she was the highest compensated supervisor, and further that she had no evidence she was entitled to more pay as a result of her seniority. (Id., ¶ 13, citing Nelson's 6/26/06 Dep., PP. 136-138). Nelson thus fails to create a fact issue as to whether BJH's proffered reason was pretextual, and so BJH's Motion for Summary Judgment on this point must be granted.

### D. Failure To Promote

In her Amended Complaint, Nelson further complains she was not promoted to the CSPD manager position, despite being more senior and more knowledgeable than Mullins. (Amended Compl., ¶ 22). Upon consideration, the Court finds this claim fails for the simple reason that Nelson

admittedly never applied for the position at issue. (BJH's Facts, ¶ 3, citing York Aff., ¶ 11). See Austin v. Minnesota Min. and Mfg. Co., 193 F.3d 992, 995 (8th Cir. 1999) (elements of failure to promote claim include employee was qualified *and applied for* a promotion). BJH's Motion for Summary Judgment on this point will therefore be granted.

**E.     Discipline**

In her Amended Complaint, Nelson complains that she received "Letters of Expectation" for keeping instruments in her office, and for various performance deficiencies including failing to communicate with her supervisor, and sleeping on the job. (Amended Compl., ¶¶ 20, 28). Upon consideration the Court finds that with these allegations, Nelson fails to establish element three of her prima facie case of race discrimination, i.e., that she suffered an adverse employment action. See Powell v. Yellow Book USA, Inc., 445 F.3d 1074, 1079 (8th Cir. 2006) ("formal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action under Title VII").[12]

Nelson next complains that she was suspended during the pendency of an investigation of complaints against her made by her subordinates. (Amended Compl., ¶ 28). As noted above, however, Nelson admits her suspension was enacted with full pay. (See BJH's Facts, ¶ 22, citing Nelson's 6/26/06 Dep., P. 47). Nelson thus again fails to establish element three of her prima facie case of race discrimination, as a suspension with pay pending the outcome of an investigation does not constitute an actionable adverse employment action. See Singletary v. Mo. Dept. of Corrections,

---

[12] As further support for its ruling, the Court notes that, with respect to the first Letter of Expectation regarding the storage of surgical equipment, it is undisputed that Dillon-Hoerchler, a white individual, also was disciplined for her, "related, but less severe, offense." (BJH's Facts, ¶ 18, citing Mullins Aff., ¶ 27). Furthermore, Nelson's second Letter of Expectation was issued by York, and Nelson testified she was not accusing York of race discrimination. (See BJH's Facts, ¶ 31, citing Nelson's 6/9/06 Dep., P. 85).

- 11 -

423 F.3d 886, 891-92 (8th Cir. 2005).[13]

### F. Remaining Allegations

In her remaining allegations of race discrimination, Nelson complains that she was the only supervisor subjected to "yodeling" over the intercom system by Mullins[14]; that Mullins threatened to "slap Plaintiff upside her head"[15]; that Mullins repeatedly would page Nelson to her office during lunch or other breaks for no reason; that Mullins took Nelson's only lead worker off the night shift; and that Mullins took technicians off the night shift and reassigned them to earlier hours. (Amended Compl., ¶¶ 16, 21, 23, 24, 25). Upon consideration, the Court finds these actions do not rise to the level of actionable adverse actions. See Box, 442 F.3d at 697 (none of these events caused plaintiff to suffer a material change in employment resulting in an adverse employment action).[16]

## II. Age Discrimination

As stated above, in her Amended Complaint, Nelson alleges unlawful discrimination on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). (Amended Compl., ¶¶ 30-41). Because she lacks direct evidence of discrimination,

---

[13] This portion of Nelson's claim of adverse employment action falls especially flat, in light of the fact that at the conclusion of her paid suspension, Nelson was offered the opportunity to return to work as a day shift supervisor in a CSPD that no longer included Mullins. (BJH's Facts, ¶ 23, citing Daniel Dep., PP. 37-38, 94-95, 96; BJH's Exhs. I, J).

[14] Nelson testified she did not believe the yodeling was racial in nature. (See Nelson's 6/9/06 Dep., P. 48).

[15] This alleged incident took place in 2002. (See Amended Compl., ¶ 21).

[16] With respect to the staffing changes, Nelson basically acknowledges they did not represent a material change in her working conditions, as she alleges not having a lead worker "*could*" result in a failure to complete all necessary work, and having fewer technicians "*will likely result*" in Nelson being short handed during the night shift. (Amended Compl., ¶¶ 24, 25 (emphasis added)). Furthermore, Nelson does not dispute BJH's contentions that she had a lead technician when she was on the day shift, that her later failure to have a lead technician was merely a function of her supervising the night shift, and that she was given an opportunity to hire a lead technician but declined. (See BJH's Facts, ¶¶ 40-42, citing Nelson's 6/9/06 Dep., P. 44; Mullins Aff., ¶¶ 20-22).

- 12 -

Nelson's ADEA claim is governed by the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 955 (8th Cir. 2001); see also Tatom v. Georgia-Pacific Corp., 228 F.3d 926, 931 (8th Cir. 2000). Under this framework, Nelson has the initial burden of establishing a prima facie case of discrimination. Tatom, 228 F.3d at 931. In order to establish a prima facie case of age discrimination, Nelson must show: "(1) [s]he was a member of a protected group, i.e., at least 40 years of age, (2) [s]he was qualified for [her] position, (3) that [s]he [suffered an adverse employment action], and (4) [s]he was replaced by a person not in the protected class, or similarly situated employees who were not members of the protected class were treated more favorably." Tatom, 228 F.3d at 931 (citations omitted).

If Nelson is successful in establishing the prima facie case, a rebuttable presumption of discrimination arises; the burden then shifts to BJH, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 836 (8th Cir. 2002) (citation omitted). Once BJH articulates such a reason, the presumption of discrimination disappears, and Nelson must prove that BJH's proffered reason is merely a pretext for discrimination. Tatom, 228 F.3d at 931; see also Walton v. McDonnell Douglas Corp., 167 F.3d 423, 427 (8th Cir. 1999). "At all times the burden of persuasion remains on the plaintiff." Walton, 167 F.3d at 427 (citation omitted).

In her Complaint, Nelson alleges she was subjected to numerous instances of discrimination in the terms and conditions of her employment. The Court will address Nelson's allegations in turn.

### A. Shift Transfer

In her Amended Complaint, Nelson first complains she was forced to transfer from supervisor on the day shift to supervisor on the night shift, a less preferable position, and was replaced by a

- 13 -

series of younger employees. (Amended Compl., ¶¶ 31-34). As stated above, however, the Court finds that with this allegation, Nelson fails to establish she suffered an adverse employment action, as with her transfer she retained the same title and benefits, and actually received an increase in pay. (BJH's Memo in Support, P. 4; see also BJH's Facts, ¶ 11). Under Eighth Circuit law, "[a] materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. There must be a material change in employment status--a reduction in title, salary, or benefits." Box, 442 F.3d at 696; see also Spears, 210 F.3d at 853 ("It is well established that [a] transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action."); Allen v. Gutierrez, 2006 WL 1662771 at *4. Under these circumstances, Nelson fails to present a prima facie case of age discrimination with respect to her transfer to the night shift.

Even assuming Nelson presented a prima facie case, the Court finds Nelson's claim nevertheless fails under McDonnell Douglas. As stated above, BJH asserts Mullins and York decided to transfer Nelson to the night shift because, "in their best judgment, Plaintiff's experience and skills were a unique combination that made her more suited for the night shift than for the day shift." (BJH's Memo in Support, P. 7, citing BJH's Facts, ¶¶ 7-9). The Court finds this assertion sufficient to constitute a legitimate, nondiscriminatory reason for the transfer.

Because BJH has met its burden of rebutting Nelson's prima facie case, the burden shifts to Nelson to establish a genuine controversy concerning intentional discrimination. Rothmeier v. Investment Advisers, Inc., 85 F.3d at 1336-37. As stated above, however, the Court finds Nelson fails to present evidence tending to demonstrate BJH's legitimate, non-discriminatory explanation for its action was merely a pretext for discrimination, as during her deposition Nelson admitted that it made business sense to have the most experienced supervisor work the shift with the fewest other

supervisors, i.e., the night shift. (See Nelson's 6/9/06 Dep., PP. 105, 106). Nelson's own testimony thus supports BJH's assertion that its decision to transfer Nelson to the night shift was based on something other than age.[17] Nelson offers no other evidence with respect to pretext, and so BJH's Motion for Summary Judgment on this point must be granted.

**B.      Discipline**

Nelson next complains that she received a "Letter of Expectation" from Mullins for keeping instruments in her office, while younger employees were not disciplined for the same offense. (Amended Compl., ¶ 36). As noted above, however, the Court finds that with this allegation, Nelson fails to establish element three of her prima facie case of age discrimination, i.e., that she suffered an adverse employment action. See Powell, 445 F.3d at 1079 ("formal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action under Title VII"); see also Baucom v. Holiday Companies, 428 F.3d 764, 768 (8th Cir. 2005) (same under ADEA). Nelson further fails to establish element four, i.e., that similarly situated employees outside the protected class were treated more favorably, as she fails to name a single younger employee who stored instruments in his or her office but was not disciplined. BJH's Motion for Summary Judgment on this point must therefore be granted.[18]

**C.      Pay Differential**

Nelson next complains she received only nominally higher pay than other supervisors, despite

---

[17] As further support for its ruling, the Court notes that in her submissions to the Court, Nelson provides the name of only one other BJH supervisor for purposes of comparison: Ms. Linda Dillon-Hoerchler. With respect to Dillon-Hoerchler, however, Nelson testified that, "Linda is one year older than I am, Linda is." (See Nelson's 6/9/06 Dep., P. 114).

[18] Nelson does not specifically mention her April 12, 2005, Letter of Expectation in her age discrimination claim. To the extent Nelson intended to protest that Letter of Expectation as a form of age discrimination, however, the Court notes Nelson herself testified she did not believe the Letter was motivated by age bias. (See Nelson's 6/26/06 Dep., PP. 32-33).

- 15 -

the fact that she had more than 30 years more seniority than similarly-situated younger employees. (Amended Compl., ¶ 37). As noted above, however, even assuming that with this allegation, Nelson presents a prima facie case of age discrimination, the Court finds BJH has a legitimate, non-discriminatory reason for its action, and Nelson fails to create a fact issue tending to demonstrate the reason was pretextual. (See BJH's Facts, ¶¶ 12, 13, citing York Aff., ¶ 31; Nelson's 6/26/06 Dep., PP. 136-138). BJH's Motion for Summary Judgment on this point is granted.

### D. Yodeling

In her final allegation of age discrimination, Nelson complains that she was the only supervisor subjected to "yodeling" over the intercom system by Mullins. (Amended Compl., ¶ 38). As stated above, the Court finds this action does not rise to the level of an actionable adverse action. See Box, 442 F.3d at 697 (this event did not cause plaintiff to suffer a material change in employment resulting in an adverse employment action).

### III. Harassment On The Bases Of Race And Age

In her Amended Complaint, Nelson further alleges that BJH discriminated against her by maintaining a hostile work environment. (Amended Compl., ¶¶ 42-87). Under Eighth Circuit law, "[t]o establish a hostile work environment claim, the plaintiff must establish that: (1) [s]he is a member of a protected class; (2) [s]he was exposed to unwelcome harassment; (3) the harassment was based on a protected characteristic of the plaintiff; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing behavior, but failed to take proper action to alleviate it." Arraleh v. County of Ramsey, 461 F.3d 967, 978 (8th Cir. 2006) (citation omitted). "The environment must be both objectively hostile to a reasonable person and subjectively hostile to the victim." Sallis v. University of Minn., 408 F.3d 470, 476 (8th Cir. 2005) (citation omitted).

To determine whether the complained-of conduct is sufficiently severe or pervasive as to constitute harassment under Title VII or the ADEA, the Court should consider, "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Arraleh, 461 F.3d at 979, quoting Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1038 (8th Cir. 2005). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. (internal quotations and citation omitted); see also Elmahdi v. Marriott Hotel Services, Inc., 339 F.3d 645, 653 (8th Cir. 2003) (internal quotations and citations omitted) ("To satisfy the high threshold of actionable harm, [Plaintiff] has to show [her] workplace was permeated with discriminatory intimidation, ridicule, and insult.").

Upon consideration, the Court finds Nelson's allegations fail to, "meet the rigorous standards reflected in [Eighth] circuit precedent to support a hostile work environment claim," for several reasons. Arraleh, 461 F.3d at 979. First, the Court notes Nelson fails to present evidence many of the alleged actions were even related to her race or age. Id.[19] Further, as explained more fully above, Nelson fails to present sufficient evidence to show that the alleged incidents of harassment affected a term, condition, or privilege of her employment. See Rollins v. Missouri Dept. of Conservation, 315 F.Supp.2d 1011, 1027 (W.D. Mo. 2004); see also Elmahdi, 339 F.3d at 653; Sallis, 408 F.3d at 477 ("We find [Plaintiff's] hostile work environment claim alleged facts that, even if assumed to be

---

[19] For example, with respect to Nelson's claim of racial harassment, it is undisputed that while Nelson's department was staffed by 80-90% African-Americans (see Amended Compl., ¶ 15), only Nelson was treated inappropriately by Mullins. (See BJH's Facts, ¶ 33, citing Nelson's 6/9/06 Dep., PP. 57-58, 77, 79, 80, 131). Furthermore, Nelson's claim of harassment based on age falls flat, in light of her admission that the two main harassers, Mullins and York, both were older than Nelson. (See BJH's Facts, ¶ 4, citing York Aff., ¶ 3; Nelson's 6/9/06 Dep., P. 113).

true, do not rise to the level of creating an unreasonable interference with [her] work performance."). In light of these circumstances, the Court finds summary judgment to be appropriate on Nelson's claims of hostile work environment.[20]

IV.     **Retaliation**

In the final count of her Amended Complaint, Nelson alleges she was retaliated against, as a result of her complaining to BJH of race and age discrimination and harassment, and then filing a charge and amended charge with the Missouri Commission on Human Rights. (Amended Compl., ¶¶ 88-103). In its Motion for Summary Judgment, BJH presents evidence that none of the complained-about events was motivated by a desire to retaliate. (BJH's Memo in Support, PP. 13-15). In her response, however, Nelson addresses only the issue of her September, 2005, suspension. (See Nelson's Opp., P. 8). The Court therefore considers the remainder of her retaliation allegations abandoned.[21]

With respect to Nelson's sole remaining claim of retaliation, the Court notes that Title VII makes it unlawful for an employer to discriminate against an employee, "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); see also 29 U.S.C. § 623(d) (same under ADEA). The McDonnell Douglas analytical framework applies to retaliation claims brought under Title VII.

---

[20] In her response, Nelson asserts she was forced to, "unwillingly resign prematurely from her position." (Nelson's Opp., P. 2). Nelson did not include a claim of constructive discharge in her Amended Complaint, however, nor did she seek leave to add such a claim. The Court therefore will not address the allegation here.

[21] In any event, the Court previously has considered the majority of the allegations contained within Nelson's retaliation claim, and found they fail to establish an adverse employment action. See Singletary, 423 F.3d at 892.

Kim v. Nash Finch Co., 123 F.3d at 1060 (citations omitted).  In order to establish a prima facie case of retaliation under Title VII, Nelson must show: "(1) she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection between the two events." LaCroix v. Sears, Roebuck, and Co., 240 F.3d 688, 691 (8th Cir. 2001) (citation omitted).  BJH may then rebut Nelson's case by advancing a legitimate, nonretaliatory reason for the adverse employment action.  Rheineck v. Hutchinson Technology, Inc., 261 F.3d 751, 757 (8th Cir. 2001) (citation omitted).  If BJH makes this showing, Nelson must show that BJH's proffered reason was a pretext for illegal discrimination.  Id. (citation omitted).

Upon consideration, the Court finds that Plaintiff fails to establish a prima facie case of retaliatory discrimination.  Specifically, as noted above, Nelson admits her suspension was enacted with full pay.  (See BJH's Facts, ¶ 22, citing Nelson's 6/26/06 Dep., P. 47).  Under those circumstances, Nelson cannot establish the second element of her prima facie case of retaliation, as a suspension with pay pending the outcome of an investigation does not constitute an actionable adverse employment action.  See Singletary, 423 F.3d at 891-92.[22]  BJH's Motion for Summary Judgment on this point will therefore be granted.

## CONCLUSION

Accordingly,

---

[22] As further noted above, Nelson's claim that the suspension represented a retaliatory adverse employment action falls especially flat, in light of the fact that at the conclusion of her paid suspension, Nelson was offered the opportunity to return to work as a day shift supervisor in a CSPD that no longer included Mullins.  (See BJH's Facts, ¶ 23, citing Daniel Dep., PP. 37-38, 94-95, 96; BJH's Exhs. I, J).

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 20) is **GRANTED**, and Plaintiff's claims are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.


Dated this 21st day of November, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE